May it please the court. I'm Washington Solicitor General Noah Purcell. On behalf of the state, I'd like to reserve five minutes for rebuttal. In order to ensure accurate competency evaluations and protect defendants' right to counsel, the federal government and the overwhelming majority of states allow at least 30 days to evaluate jailed criminal defendants. Yet the district court here held that defendants have a fundamental right to be evaluated within seven days. In announcing that new right that no other court has ever recognized, the district court made two crucial legal errors. It applied the wrong test and it reached the wrong outcome under the test it applied. The result is an extraordinary holding that would invalidate the competency evaluation systems of virtually every state and the federal government while doing little, if anything, to benefit defendants' mental illness. This court should reverse. Now the first legal error in the district court's opinion was applying generic substantive due process principles instead of the Sixth Amendment's very specific protection against prolonged pretrial incarceration. So when I looked at some of the case law in the Sixth Amendment, it seemed to focus on, first of all, a case-by-case analysis and that the remedy would be dismissal of the indictment. So why would that amendment apply in this context? Well, that's exactly right, Your Honor, but it would apply because what the plaintiffs are complaining about here is prolonged pretrial incarceration and the Supreme Court's decisions in cases like Ewell and McDonald make very clear that the Sixth Amendment provides explicit protection against prolonged pretrial incarceration. So it is the substantive amendment that is directly on point and provides explicit protection. The Due Process Clause also requires case-by-case analysis. It's very clear under the case law, so that's not a meaningful difference between the two doctrines. But here, the Sixth Amendment is what provides them the explicit protection against what they're complaining about. So do you agree that the only remedy, that there's no ability to obtain an adjunctive relief only dismissal of an indictment if there's a delay in getting an evaluation? Well, Your Honor, the more direct remedy for an individual defendant in this case would have been to move for dismissal under the Sixth Amendment. But no, we're not saying that the Sixth Amendment provides them no potential relief here, but they haven't even argued that they can show a Sixth Amendment violation here. So if the Court agrees with us that the Sixth Amendment applies, then that's really the end of the case because they don't even claim that they can show a Sixth Amendment violation. It's kind of unusual for us because the whole focus of the trial and all the findings and the decision has been the Fourteenth Amendment. Now, I know you say you, in passing in a couple of places, mentioned the Sixth Amendment, but the Sixth Amendment was missing in action in the District Court. Why? Well, two points on that, Your Honor. First of all, this case proceeded on an extraordinarily expedited schedule at the District Court's direction, and as the case progressed, the State asked very specifically that the District Court bifurcate the class into two groups, one that had already been deemed incompetent, those defendants who had already been deemed incompetent, and those who had not. And it's that latter group that's the only group at issue here. I understand. And as to that group, we argued very specifically in our trial brief, five pages, that the Sixth Amendment should apply, not substantive due process. So we presented this issue to the District Court. Ultimately, Your Honor, though... Did you go back after these findings and ask the District Court to make a determination on the Sixth Amendment once you saw what the findings were and the conclusions? No, Your Honor. No, we did not. It was very clear that the District Court had decided to apply due process. And honestly, we should prevail under due process in any event. So even if the Court concludes that the Sixth Amendment does not govern here, under the due process standard, the District Court erred by declaring this new fundamental right that no other court has ever recognized and that would strike down the competency evaluation systems of virtually every state and the federal government. There is no deep-seated principle or tradition in our country of providing competency evaluations within seven days. That is not, as I said, no other court has ever recognized such a right. Virtually every state and the federal government allow vastly longer. And if you just think about an easy hypothetical, I mean, under the District Court's ruling, if a trial court orders an evaluation and the state is ready to do it on the third day or the fourth day, but defense counsel is unavailable in trial or sick or on vacation until day eight, the state has now supposedly violated that defendant's fundamental due process rights, basic principles of American democracy without which neither liberty nor justice would exist. Well, we could fix that, couldn't we, without disturbing the injunction writ large, right? We could tell the District Court you've got to provide some elasticity there for non-medical reasons that may flow out of the defendant's camp, unavailability of an interpreter, case of a language problem, unavailability of counsel, that sort of thing. I mean, if that's your complaint about the injunction, that's an easy enough fix by us, isn't it? Your Honor, that would certainly be an improvement, yes. But the complaint is not just about the injunction. To be clear, the District Court didn't order seven days as a remedy. The District Court held that defendants have a due process right to be evaluated within seven days. That would apply anywhere. That's the ruling that would strike down every competency evaluation system in the country, including the federal one. My understanding of the injunction is if the seven-day rule is violated, they go into a hospital setting, correct? They go to one of the state's two mental institutions, yes, Western State Hospital or Eastern State Hospital. They're not kicked out on the street. No, but patients currently at Western State Hospital or Eastern State Hospital might need to be because those hospitals are already full. So that's one of our complaints, that the District Court ordered this remedy that has no basis in the Constitution that's going to cause real harm to other mentally ill defendants and patients. My question was really along the lines of Judge Hawkins, and I actually interlineated a little language in the injunctions that I'd like to ask you about. Okay, so I'm looking at the proposed injunction issued by the District Court in which the court says seven days, or for clinical good cause, you could go back to the court. What if the injunction said, or other documented good cause, in effect you could get an extension and go back to the court? What would be the state's response to that? It wouldn't be limited to interpreters or counsel. There may be other circumstances. Well, two points about that, Your Honor. First of all, the District Court, an injunction has to be based on a constitutional violation, and this court has made very clear in cases like KDA and the Supreme Court has made very clear that a federal court cannot order a state to do something beyond what federal law requires. Here, federal statutory law allows 30 days to complete a competency evaluation. So it would be error to just stick with that seven-day deadline and provide a broader exception when there's no constitutional basis for the seven-day deadline in the first place. Has the Department of Justice brought suit against states in this subject area for incarceration's pre-evaluation longer than 30 days? Not that I'm aware of, Your Honor. Not that I'm aware of, no. Let's assume that the Sixth Amendment is not the operative substantive law, but it's substantive due process. Do you agree that if there is substantive due process, that there is some point at which a pretrial detainee who's been ordered to have a mental evaluation, that there is some time frame in which there's a substantive due process constitutional right to at least have that completed? It's not the right to the evaluation, Your Honor. It's the right to not be held, anyway. Well, not to be held. Yes, at some point, yes. Okay, so we would agree that somewhere between zero and X, there is a substantive due process right not to be held. Yes. Okay. And the Washington, I mean, the district court seemed to come to the seven days because it was looking at MINK and what happens in terms of availability of restorative services. Do you have any authority that we should look to if we were trying to benchmark how would you define the time frame for that substantive right? Well, so first of all, again, it would be odd for a federal court to order the state to do something that the federal government itself does not do. So to set a deadline shorter than 30 days would be, I think, questionable. But if the federal deadline is too long, what if that's unconstitutional? It just hasn't been challenged. What if the federal deadline were five years? Would you stand here and tell me the same thing? If that were the rule in every other state and no other court had ever declared a shorter deadline, I'd be wary of saying that that's a deeply held tradition or principle in our country, guaranteeing a shorter evaluation. And, Your Honor, that's really not what's at issue here. I mean, the average timeline in Washington is now 22 days. State law sets a deadline of 14 days. What we proposed in the district court, if this court thinks that there was a substantive process violation, what we proposed was that the district court simply order us to comply with state law, which allows 14 days, which is still less than half of what federal law allows, less than half of what most states allow. Okay, let me ask you about that because as I read the state law, the 2015 law is what you're referring to, is that correct? Yes, right. Well, one, there's not any kind of private right of action under that, and it looked to me like aspirational more than a requirement. Well, two points, Your Honor. What I'm saying is if the district court ordered us to comply with that law, then certainly the federal district court could enforce that holding even though it's not. Sorry, it could enforce that provision even though it's not. It doesn't allow for a private right of action in state court. So just so I can be clear, if the time frame were 14 days rather than 7 days, you would not view that as either a practical or a constitutional problem. Is that correct? No, Your Honor, that's not correct. That's our state law goal, so we are aiming to achieve that, but we don't believe it's constitutionally required. The state of Washington has set a goal that is much stricter than virtually any other state or the federal government, so we're not conceding that that is constitutionally required. We don't think it is. Adopting that as a constitutional standard would also invalidate the federal competency evaluation system and the evaluation system in most other states, so we still think that would be an extreme holding. Well, so what would be, you know, I'm trying to understand the practical impact. Plaintiffs and the class has come to the court on a constitutional claim for deprivation with respect to extended holding, and you're saying, well, if the court just says 14 days, which is the new Washington law, that's okay. But, you know, that's basically saying, okay, comply with the constitutional law. I mean, comply with the state law, but never mind your constitutional claim. How can the court do that? No, Your Honor. To be precise, what we're saying is if the court thinks there is a constitutional violation here, we think the remedy should be no stricter than the state law 14-day deadline. But we think the state law 14-day deadline is already much stricter than what the federal constitution requires. So let me phrase it differently then. If the court were to determine there's a constitutional violation, the state is saying that it's willing to comply with state law. We think that would be the most reasonable remedy, Your Honor, yes, to order us to comply with state law. And as I understood it in the Ming case from Oregon, am I correct there that the court found that the substantive due process right was derived in essence from the state statute and the time limit set there? I think Ming is a little bit unclear on that point, Your Honor. The state did use, sorry, the court used the state's 7-day deadline for transferring someone for restoration services to, but it's a little bit unclear about exactly whether that was constitutionally compelled or whether it was a sort of procedural due process right that the district court, or sorry, that the Ninth Circuit was enforcing that was created by state law. And under Ming, I think it's important to point out, Your Honor, under Ming, Ming really favors the state in this case because the interests at issue on both sides of the balancing test there are dramatically different here. This court held Oregon had no legitimate interest in holding someone for more than 7 days after they'd been deemed incompetent. Here the state has two very legitimate interests in often taking more than 7 days to complete an evaluation. One is the need for accurate evaluations, things like allowing intoxication to clear, gathering medical records, and the other is protecting the defendant's right to counsel. And you don't have to take my word for it. I mean, the National Judicial College, independent expert organization, recommends 21 to 30 days as best practice, not constitutional minimum, but best practice for felony evaluations. Virtually every state and the federal government allow vastly longer than 7 days to complete evaluations. So under Supreme Court decisions like Shull v. Martin, you have to look at that basically national consensus in evaluating whether the state's interests here are legitimate. And then on the other side of the balance, in Mink the defendants had all been deemed incompetent already, and this court held that that was when their rights to restorative treatment and transfer kicked in. Here none of these defendants have yet been deemed incompetent, and most never will be. Most will be found competent. So most never will have the rights that were at issue in Mink, and none do yet. So the interests on both sides are dramatically different. Could you also tell me, I know that there's various statistics in here that depending on the nature of the crime, there's different percentages that ultimately might be found not competent to stand trial, but there is a thumbnail sort of 50% of the individuals evaluated overall probably will be held competent, so they would just be continued to be held in a normal jail facility. And we're only talking about individuals in a jail facility, correct? Right, that's it. Not community evaluation. So my question is, is there data in the record with respect to how long on average it is before a competency order is issued in Washington State courts? Because I know that varies depending on a lot of factors. You know, Your Honor, I don't think there's any sort of comprehensive data on that, and the state wouldn't necessarily even have that because it's the counties where that would happen. I can tell you that, for example, the lead plaintiff in this case, Ms. Bedias, was charged and held in jail for much of the time, for two and a half months before a competency evaluation was even ordered, and then the evaluation happened within 14 days. So that's an example of how this remedy really is not going to do a whole lot for mentally ill defendants in Washington if they're being held in jails that provide constitutionally inadequate treatment, and they have a ready remedy in suing those jails. I mean, if a defendant has some degree of mental illness but is not incompetent, they're just going to remain in the very same jail they were in before, and speeding up the evaluation doesn't change that. Your Honor, as I... That was a question I had in the sense that, you know, it has to come to the attention of either the court because there's a hearing or it comes to the court because there's a motion, at which point the counsel has determined there's some issue or a family member or someone has weighed in to the counsel. I mean, you have a counsel at that point. So there's quite a lag time before you get to the order often. Is that in the record? I mean, it's a matter of fact because we know how the legal system works. I think anecdotally it's in the record, but I don't think there's anything comprehensive. All right. Thank you. Did you want to save your time? I would like to reserve, yes, if I may, unless the court has any other questions right now. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Anita Candela for plaintiff appellees and class members. I want to start with, I think, where the court left off, which is about the seven-day injunction and whether that is narrowly tailored. And that evidence, I'm sorry, that injunction is supported by the evidence and is narrowly tailored. The testimony at trial was that delays beyond seven days are unnecessary and unavoidable. So is it your view that it could be seven days in Washington and 14 in Oregon and 21 in California, just depending on the needs of every state? Yes. Any injunction issued in a case like this would have to be supported by the testimony at trial. And the testimony at trial here, so yes, and the testimony at trial here was that when the system is working efficiently, performs its evaluations in seven days. Dr. Robert Powers, SCR 46A, testifies that when the demand for evaluations matches the supply of evaluators, evaluations are completed in seven days. But how does that give you a constitutional right? I understand that administratively and practically that makes a lot of sense, but where do you get the constitutional right to the seven days? Well, the court engaged in the balancing test that this court applied in MNC and balanced the class members' interests and the defendants' interests and found that all of them converged in favor of prompt evaluations without delay. And this is because as a finding of fact, and this would be findings of fact 25 and 28, she found that class members deteriorate with each successive day of incarceration, making them harder to restore, making it harder for their criminal cases to proceed. Does that account for the fact that in reality, you get arrested, you get assigned counsel, and then there's an indeterminate amount of time before a request is made to the court for a competency evaluation. And then magically, once that order is on the books, some constitutional right starts to run. Well, the moment that that order is entered on the books, that criminal case is stayed, and that individual whose criminal case has been stayed because a state court judge has made a threshold finding that there is reason to doubt that person's competence. And that is what the state statute requires, that the state court make a determination that there is reason to doubt. At that point, the criminal case is stayed, and that individual can exercise no procedural rights. So this is different from a pretrial detainee who is waiting for lab results or something else, because that person can decide at some point, you know what, I'm done waiting, I want to plead out. No, but what I'm suggesting is that to get to that point, there's already been an indeterminate passage of time in which a person, at least the 50% of whom are found not competent to stand trial, have been sitting in the jail. So there's not... In other words, is it your view there's a constitutional right, for example, to have a competency order within X number of days of being detained? No, and I don't think it can be, because someone may start out being competent, and then counsel may have doubts one month in that the person has decompensated in jail, that they aren't getting the proper medications in jail, that just for whatever reason, the doubt regarding competency arises later on. But let's say the lawyer can't meet with them, and that happens a lot, that there's no court hearing on the docket, so the lawyer may not be meeting with the individual detainee. So why isn't there a constitutional right during all the time someone who is incompetent is held before there's an order giving them restorative services? And why does it arise with the moment of the order? Because it's that order that triggers the stoppage of everything. It stops the criminal case from going forward. It stops the person from choosing to exercise any rights at all. It stops everything. And until that service is received, nothing more can happen. No judge is going to accept a guilty plea from the misdemeanant who says, you know what, I've waited three weeks for this evaluation, I'm done, I just want to plead out. No judge can do that. So it is different from the individual whose criminal case is still proceeding and where other things may be happening that are not automatically apparent, where defense counsel is working. So the moment that this order is entered, the curtain falls and everything stops, and that's what makes us different. How do you account in your balancing test, then, for individuals who are awaiting a competency evaluation but will be found competent if after seven days there isn't a hearing, they're shipped off to a state hospital where they're put into a mental health facility and they are not mental health qualified in terms of needing to be detained in a mental health facility? Do those individuals have any rights? Being moved to a therapeutic environment doesn't violate their constitutional rights. They do have a right to have their case move forward, So it's okay to ship a mentally competent person off to one of the state hospitals and you don't think that in any way violates any of their rights? Well, it's not just a mentally competent person, though. It is a person for whom a state criminal court judge has found that there is reason to doubt competency. That judge has looked at that person. I'm asking for an individual. There's a reason to doubt competency, and in the end those people divide into two categories. Those for whom there's a determination made and those for whom a determination is made that they can proceed to trial. So I'm asking about the individuals for whom the ultimate determination won't be made that under this order they would be required to be sent to a mental institution, correct? That is correct, and I think what I would say first is we know that half of this class is going to require restoration services, right? And I know you're talking about the other half, and this is also finding of fact 16. And we know that if they're determined incompetent, then they have to get the restorative services in the seven days, and we already know that, and that's not challenged by the state, correct? That is correct, and we can't know ex-ante who those people are, right? So we have a class, and we cannot know ex-ante which half of this class is going to require the restorative services, and we can't know that until they've had the evaluation. And given that what we do know about this class, as a matter of fact, as the district court found, is that they do not do well in jail. They decompensate each additional day of incarceration, makes it harder to restore them. That runs counter to the state's interest in actually bringing them to trial. Given that that is the case, the injunction to transport, the seven-day injunction and then the part of it requiring the transport makes sense. And yes, you are right that some individuals will be found competent and will be moved to the more therapeutic environment of a hospital. I don't believe that that violates their constitutional rights, particularly given that they have exhibited some kind of mental health symptoms that gave that state court judge pause. What about if your lawyer is unavailable and the time is running, at least under this order, that doesn't matter? So does that mean they can proceed to the competency evaluation without a lawyer? No, I don't believe it means that. I'm trying to understand all that. Because these findings in this order have a lot of high level in them, and we're talking about what's really going to happen to people. So let's say the seven days run. Does that tell me whether or not, under the state procedures, an individual can have a competency here, a determination without a lawyer present? They absolutely can. They can't? They can choose not to have a lawyer present. Right, and so a mentally ill person can make that determination not to have a lawyer present, and then because of the seven days you're going to be sent out or not, right? Right. I do want to just go back a little bit more to the findings of fact, though, on this particular issue. So I believe it's at SCR 577, 578, you'll find wait lists from one of the hospitals which list out reasons why people are waiting for evaluations. Every single reason is either bed availability or evaluator availability. There is no wait list that ever says that defense counsel was the problem. There was no credible testimony of this is a problem that occurs in any consistent way, and you have an amicus brief from WDA and WACDA that talks about the defense's commitment to making these evaluations happen in a timely fashion, but these wait lists tell you what the problem is, and the problem is not defense counsel, it's not interpreters. The problem is evaluator availability and bed space. It's not these other things. And I take your point on that. The problem is state resources. They've said that, you know, in terms of hiring, how much you pay people, retention, all the things that are in the record. But what makes seven days the magic day and the magic amount? The balancing test and the testimony at trial. So if we go back to the balancing, we think about the harm to the plaintiffs, and this harm, there's a liberty interest that this court recognized in Mink, and there's also the harm that is a finding of fact plaintiffs are experiencing, and this runs counter to the state's articulated interest in bringing individuals to trial. If they are harder to restore, the state will end up using more resources to try to restore them, and some of them may become unrestorable and thus will never get to stand trial. The district court found that the state articulated an interest in bringing these class members to trial. So we have that balancing test and the harms that are occurring to plaintiffs with each additional day of incarceration and testimony that delays beyond seven days are both unnecessary and avoidable. But see, that doesn't make it constitutional. In other words, they might be unavoidable if you allocated a billion dollars right now and said, have at it, you've got to have everything done. And there's no doubt the state needs to put some resources in it, and a court order is the way to do that because it hasn't happened with other legislative initiatives. But does that make it a constitutional requirement? So could you point me where in the district court's findings that she distinguishes between inmates eligible, or detainees eligible for restorative services and those eligible for having the competency evaluation, and findings are specifically made as to what the weighing was on the pretrial competency people? Well, in her findings of fact, and I apologize, but I can't remember which number this is, but she discusses the evaluation class and talks about the fact that while they do not have a right to restorative treatment, they do have, at a minimum, due process requires that the nature and duration of their confinement bear some reasonable relationship to its purpose, and that is the test that she's looking at here. So that's number nine. She says that there's got to be a rational relationship. But then what is it, what I found missing, and maybe that's why I'm trying to have you help me out, is where you really do the balancing of time. It's not that anyone, no one should be detained beyond what they need to be, but where the constitutional cliff kicks in and the state falls off of it, I'm trying to understand in the findings what I should look at so I know what I'm benchmarking the balancing against. Well, and I think maybe it might make sense for me to articulate some of the context of this case because I think that also colored the injunction. So first, we know that the state had issued a bill setting a target deadline of seven days in 2011. The reason they issued this was because in 2011, on average, individuals were waiting 41 days for completion of NJL evaluations, and the state was very concerned about this. And so they set this target deadline, and they asked DSHS, the defendants, to provide quarterly reports every quarter when they failed to meet the deadline. And DSHS provided those quarterly reports every quarter because they didn't meet the deadline, and as they state repeatedly, because of resource issues. The district court also found that the defendants have a policy of disregarding court orders. The evidence at trial was that in individual criminal cases, state court judges would order defendants to provide immediate transport or immediate services to individual class members. And DSHS adopted a policy of disregarding those orders. Was this relating to restorative services or to the actual having of the hearing? To the services, to provision of the services. I'm trying to distinguish between the two because they're not appealing the provision of services. Well, when I say provision of services, I'm considering the provision of evaluation to be a service. So it's both. And what they said was that they wanted fairness considerations. They were not going to follow those individual criminal court orders, and I believe they also testified that they wanted to discourage defense attorneys from filing these motions. And so you have here a defendant who has a long history of leaving class members to languish in jail and not providing these services, and who has taken a sanction spreadsheet that they maintain, I believe it's at SCR 60-84, where they've just listed out all the court orders, asking them to do things, and the sanctions that are being imposed for their failure to obey those court orders without actually taking any action. So you have this defendant who is disobeying court orders, who's engaged in this ongoing violation of constitutional rights, and then you have testimony at trial saying, well, we do do this in seven days when our system is running efficiently. And when the state asks, for example, the district court, I'm sorry, the district court asks Deputy Assistant Secretary Victoria Roberts about the seven-day target in the state statute, it says, well, can you meet it? And Victoria Roberts says, well, we've decided to hire 10 new evaluators and increase pay, and so that should take care of the problem. At no point do they say, we can't do it, there are too many barriers, there are structural issues that prevent us from doing this. I hear all that. And it seems to me that one of the remedies for not following this is the same thing that happened here in Washington with state education. You start finding people and they start doing things, and the state court could order that, of course. We know there's a huge issue. We know there's some constitutional right, and the Attorney General has candidly admitted that. My concern is how do you get to the balancing of the seven days, because if they don't follow the seven days in legislation, now we have a court order, you basically have the same thing. You can go in and try to enforce the fact that they're not following the legislation, or you can enforce a court order, but that doesn't answer the constitutional question. Is there any other state we can look to where there's been a determination of what the constitutional range was in terms of ordering these evaluations? I don't think the record in other states will be helpful, particularly because we had a seven-day trial about the record in Washington and how the system works. You see that? Aren't the other states governed by the U.S. Constitution?  I don't know why Washington all of a sudden gets kind of carved out, because the constitutional right as established should presumably apply to everyone nationwide, right? Yes. I read the district court's order as crafting a remedy to an ongoing constitutional violation, and if we look at Mink, that's exactly what the district court there did too. There was no Oregon state statute in effect at the time that the Mink injunction was issued. That statute had sunsetted, but the court used it as a guideline for what that system could do in crafting its remedy, and this court upheld that. This court is reviewing this injunction for an abuse of discretion. The district court crafted a remedy based on the facts that were found at trial, the testimony provided by the witness, her evaluations of credibility, and found that in Washington, given the harms the plaintiffs are suffering and the way the system works here, the appropriate remedy is seven days. I'd also just point out the state argued that, well, this order could just undo systems everywhere. Mink comes out at seven days. That's not an injunction that's followed by the federal government or by other jurisdictions. Mink's progeny come out with different outcomes. In Louisiana, a litigation pursuant to Mink resulted in a different injunction based on the facts of that system. What we're looking at here is a constitutional violation and the district court's remedy of that violation based on the facts at this trial. I think Mink is sort of the operative case here and really binding on this court. The district court adhered closely to it and engaged in the same balancing test that this court upheld in Mink, which was looking at the class member's interest and the state's interest. As I stated earlier, all of them here converge on prompt competency evaluation. I want to turn briefly to the Sixth Amendment and just the waiver issue and reinforce that the defendants failed to raise it both beginning, during, and after trial. At summary judgment, they conceded that Mink governed this case and that class members had substantive due process rights. In their amended findings of fact conclusions of law that were submitted after trial, they similarly argued that Mink provides the correct framework for analyzing this case and then asked for a 21-day injunction for evaluations pursuant to substantive due process. I think the Sixth Amendment argument here is a red herring and it's been waived and the court should not consider that. The state has raised a number of excuses for why it can't provide evaluations within seven days, but all of these excuses were litigated extensively at trial. After weighing the credibility of witnesses and the evidence regarding these perceived barriers, the trial court issued findings of fact, dismissing these excuses, finding that all of these barriers could be overcome with adequate planning and that seven days is the right standard for Washington. Based on the findings of fact and the balancing test, we urge the court to affirm the injunction in all respects. Thank you. There's three points I'd like to make in rebuttal if time allows, but the most important one is to address your question, Judge McKeon, about the deadline and the question here, as you pointed out, is not what is theoretically achievable by the state with unlimited resources. The question is what is constitutionally required and the Supreme Court decision that makes that extraordinarily clear is Bell v. Wolfish. In that case, and I would urge you to look at it carefully, especially footnote 25, in that case the district court had ordered the federal detention facility to house each inmate in his own cell. That was their due process claim. They claimed we're being crammed into cells that are designed for one person, and several people are being held in them. And the district court ordered the federal government to change that, to hold each person in an individual cell, and the federal government did that from the time the district court ordered throughout the appeal all the way up to the Supreme Court. And so it was clearly achievable. There's no argument that it was not achievable. They did it. Nonetheless, the U.S. Supreme Court reversed and said, no, that's not the question. The question is what is constitutionally required, and there is no nationwide principle deep-rooted in our traditions and practices of giving each person, each pretrial detainee, his own cell. And so they reversed. And so that just drives home your point, which I think is exactly right, which is that, yes, in many cases, not all, in many cases the state could theoretically achieve a seven-day deadline, but that is not constitutionally required. And I think counsel's argument that the deadline could differ from one state to another is quite telling on that point. Substantive due process does not impose one rule in Washington and another rule in Oregon and another rule in New York. It's meant to be our basic, most fundamental principles. And so the idea that the deadline could vary from one place to another does not square with the case law. Well, if the way that they phrased it is a little bit different than you have, everybody agrees, let's just say for starters there's a due process violation, then the issue and the violation here is a time-based violation. So then you have to figure out some reasonable period that has a rational relationship. And, you know, we get the rational relationship clear as a whistle out of Bellevue-Wilsh as well. But they're saying when you try to figure out what's reasonable, then the district court gets to balance a number of factors, and the district court came up with seven days. And if someone else might come up with 14, that doesn't mean that the district court was wrong in its balancing test, does it? Or if somebody else would come up with 21? Your Honor, it's true that what's theoretically possible certainly should play some role in the substantive due process analysis. It would be silly to order the state to do something that it can't do. But it's not the definitive answer. And to see that, I guess I'd say two things. Number one, Shaw v. Martin, the Supreme Court decision in that case, made very clear in that case it was a challenge to New York's policy of detaining juveniles before trial. And the district court and the court of appeals in that case found that there was basically no point in the policy. It was useless. And the Supreme Court reversed, looking around the country and saying, look, virtually every state in the country allows this. We're going to defer to their legitimate interests. And here, Your Honor, is don't just take the state's word for it. I mean, the National Judicial College recommends as a best practice allowing 21 to 30 days for felony competency evaluations. So if substantive, I mean, that was a 2012 recommendation by this independent panel of experts, not based on sort of state budget constraints or anything else, but just best practice. So you have to look at the national essentially consensus that seven days is not sufficient or required to complete competency evaluations. The district court's findings here ultimately are largely irrelevant. The substantive due process question is a legal question of what are the constitutional minimums, what principles are deep-rooted in our traditions and practice. But you, as I understood your initial argument, is that you wouldn't be here if it were 14 days. Is that correct? No, Your Honor. I think we would be less concerned about the practical impacts of the order. Tell me first, would you be here or not if it were 14 days? Well, Your Honor, that... I mean, I recognize the Attorney General has to make the ultimate decision, but you representing the Attorney General today. 14 days is the state's policy deadline. We are working actively to achieve that. We have invested tens of millions of dollars to attempt to achieve that. That would have been much less onerous. That said, we still don't think 14 days even is constitutionally required, and that, again, is supported by the virtually universal practice of allowing more than that. So while we have suggested that as a possible remedy here, as sort of there's no possible way that anything shorter than that could be required under the case law around the country, we also think that even 14 days is not constitutionally required. The state has set a policy goal much stricter than the federal government and virtually every other state, and we shouldn't be punished for doing that, even though we've often fallen short in trying to meet that goal. So, I mean, that's effectively what's happening with setting a 7-day deadline or a 14-day deadline, is that the district court is latching on to our aspirational goal that we have laudably set for ourselves and that we're working for. Is there any leeway in setting a remedy for the fact that there used to be in, I think, 2011 legislation about 7 days, and that didn't work out? Is there any leeway here for saying the only way to have an effective remedy is to put a short fuse on it? So certain things, there's a constitutional violation, but you have to figure out how to fix it, and that's what injunctions do. Isn't there some leeway there, particularly when there's been noncompliance with the state's own prior legislation? Yes, Your Honor, there's certainly some leeway in crafting an injunction, but this court and the Supreme Court have made very clear that an injunction is an abuse of discretion if it requires the state to do any more than is required by the Constitution. And so to say that the Constitution requires a 7-day deadline or even a 14-day deadline, for that matter, would be to invalidate virtually every competency evaluation system in the country. So I guess that's why I would urge caution in saying that that is constitutionally required when, again, it would basically strike down virtually every system in the country. Well, now I don't know where the state is coming out because what's the state saying the number should be? Because you told me that the state has this new legislation that the state intends to comply with. I'm sorry if I've been wrong. Assuming there's going to be an injunction, has the state taken a position in the district court as to what the time frame for that injunction should be? I'm sorry, Your Honor, I didn't understand the premise of your question. Assuming there is an injunction. Assuming there's a violation. Assuming there is a violation. Assuming there will be an injunction. Then what we urge in the district court and what we would urge here is ordering the state to comply with state law, which sets a presumptive 14-day deadline, allows 7-day extension for clinical reasons, and also does not hold against the state if the delay beyond 14 days is caused by factors beyond the state's control, like the unavailability of defense counsel. And that makes eminent sense under the Due Process Clause because, as I said earlier, it just does not shock our conscience if the state is ready to do the evaluation at some quick point, but defense counsel is unavailable, that's not the state's fault. That should not be held against the state for respecting the defendant's right to have counsel present at the interview. So the short version of the answer is we don't believe 14 days is constitutionally compelled, but if the court finds that there was a violation here and thinks that an injunction is appropriate, what we suggested was ordering compliance with state law, which does set a 14-day deadline and which the federal district court could enforce. Thank you. Thank you both for the arguments this morning. Very interesting and troubling case. True Blood versus the State Department of Social and Health Services is submitted and we're adjourned for the morning. Thank you.
judges: Hawkins, McKeown, Gleason